MARY ANNE DAVIES (Bar No. 14965)
LAURA HENRIE (Bar No. 12449)
LAKSHMI VANDERWERF (Bar No. 17336)
Disability Law Center
960 South Main Street
Salt Lake City, Utah 84101
Phone: (801) 363-1347
Email: lhenrie@disabilitylawcenter.org
       mdavies@disabilitylawcenter.org
       lvanderwerf@disabilitylawcenter.org

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **DONNA BOOHER,**<br><br>Plaintiff,<br><br>vs.<br><br>**ROWLAND HALL- ST. MARK'S SCHOOL,**<br><br>Defendant. | **COMPLAINT**<br><br>**JURY DEMANDED**<br><br>Case 2:23-cv-00703-DAK<br><br>Judge Dale A. Kimball |

Plaintiff Donna Booher ("Plaintiff" or "Ms. Booher"), through her attorneys, files this Complaint against Defendant Rowland Hall- St. Mark's School ("Defendant" or "Rowland Hall") and alleges as follows:

## NATURE OF THE ACTION

1. This is a disability discrimination action brought by Plaintiff Donna Booher under the Americans with Disabilities Amendments Act of 2008 ("ADA"), codified at 42 U.S.C. §12101 *et*

COMPLAINT
PAGE | **1**

*seq.* concerning wrongful termination under 42. U.S.C. § 121112(a), failure to accommodate under 42 U.S.C. § 12112(b)(5)(A), and retaliation under 42 U.S.C. § 12203(a).

2. Ms. Booher seeks injunctive relief prohibiting Defendant Rowland Hall from continuing its misconduct in violation of the ADA and prohibiting Defendant from engaging in similar misconduct in the future.

3. Ms. Booher seeks monetary relief as compensation for Defendant's violation of her rights under the ADA pursuant to 42 U.S.C. § 12188.

4. Ms. Booher seeks attorney fees and court costs pursuant to 42 U.S.C. § 12205.

## THE PARTIES

5. Defendant is a Utah corporation.

6. Defendant employs more than fifteen employees.

7. Ms. Booher is an individual with a traumatic brain injury ("TBI").

8. At all times relevant to this Complaint, Plaintiff resided in Utah.

9. At all times relevant to this Complaint, Plaintiff worked for Defendant.

## JURISDICTION AND VENUE

10. Ms. Booher has exhausted administrative remedies, and now seeks relief in Federal Court.

11. This Court has jurisdiction to hear and decide Plaintiff's ADA claims pursuant to §1331 of Title 28 of the U.S. Code and the ADA, 42 U.S.C. §12101–12213.

12. This Court has personal jurisdiction over Defendant because Defendant is a Utah corporation.

13. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) because the Defendant resides with the district.

# STATEMENT OF FACTS

14. On or about August 23, 2008, Ms. Booher began working for Rowland Hall as an Academic Support Counselor.

15. Each year, Rowland Hall provided Ms. Booher with an employment contract for the following school year. The academic school year ran from August through June of the following year. Ms. Booher's contract, up until 2015, was for a salaried position and provided for a 30-day written notice in the event of termination.

16. On or about June 5, 2014, Ms. Booher was injured at work after being knocked into a wall by a student running by, resulting in a concussion and a traumatic brain injury after hitting her head.

17. On or about September 22, 2014, Ms. Booher began a short-term disability to heal from her post-concussion symptoms.

18. While on leave, two of Ms. Booher's physicians provided Rowland Hall with medical documentation explaining that she suffered from post-concussion symptoms including extreme cognitive fatigue and headaches.

19. On or about February 13, 2015, Ms. Booher's medical provider Dr. Colby Hansen ("Dr. Hansen") provided a letter to Rowland Hall stating that Ms. Booher had been diagnosed with post-concussion syndrome. The letter said that her cognitive and mental endurance was limited and that complicated, difficult, and demanding tasks lead to an escalation of her symptoms. The letter recommended that Ms. Booher return to work for 2-4 hours per day for 3-5 days per week. The letter also recommended that Ms. Booher's duties be primarily focused on interpersonal interaction, and that paperwork and computer work should be minimized. The letter stated that

ultimately Ms. Booher would likely be able to return to full-time work with minimal reasonable accommodations.

20. Upon her return to work, a majority of Ms. Booher's accommodation requests were granted but others were denied, such as her request to complete some of her tasks at home outside of school hours.

21. Rowland Hall's Human Resources Manager, Carolyn Uhle ("Ms. Uhle") instructed Ms. Booher that she was not allowed to record any time that she worked from home. Ms. Booher was aware of other teachers at this time that were permitted to complete work at home.

22. On or about June 5, 2015, Ms. Booher received a year-end review from Upper School Principal Lee Thompson which commended her for handling her return to work with a new disability.

23. By 2016, Ms. Booher had increased her hours to .8 of full-time employment, however she was still unable to include the hours she worked from home when recording her time.

24. On or about March 28, 2016, Rowland Hall presented Ms. Booher with a new contract for the following school year. The contract removed Ms. Booher from her salaried position and reduced her to an hourly wage.

25. Like the previous school year, Ms. Booher was not allowed to record time worked from home.

26. On or about January 16, 2017, Ms. Uhle emailed Ms. Booher to inform her that she was not recording hours equivalent to 0.8 full time employment. Ms. Uhle informed Ms. Booher that she was recording hours equivalent to 0.5 full time employment. Ms. Uhle revised Ms. Booher's

employment agreement and compensation to reflect a 0.5 full-time employment rate even though Ms. Booher was performing work from home that she was not permitted to record.

27. On or about February 16, 2017, Ms. Booher met with Upper School Principal Ingrid Gustavson ("Ms. Gustavson") and Middle School Principal Tyler Fonarow ("Mr. Fonarow") to request reassignment to the position of Middle School Social Emotional Counselor. Ms. Booher was performing many of the duties of a Social Emotional Counselor such as running programs dealing with suicide prevention, substance abuse intervention, sexual assault referral, and behavioral issues.

28. Mr. Fonarow denied this request and told Ms. Booher that she would need to interview for the position. Ms. Booher requested the reasonable accommodation of interviewing in person for the position because computer screens aggravated her symptoms. Mr. Fonarow told Ms. Booher that she could only interview over video in fairness to the other candidates. Ms. Booher was not selected for the position.

29. Shortly after requesting the reasonable accommodation of reassignment, Ms. Booher was notified in approximately April of 2017 that she would be transferred to the Middle School Academic Support Counselor position from the Upper School even though she preferred working in the Upper School and was concerned the change could aggravate the symptoms of her TBI.

30. On or about August 16, 2017, Rowland Hall Head of School Alan Sparrow ("Mr. Sparrow") commended Ms. Booher for ten years of employment and service to Rowland Hall.

31. Since her accident in 2014, Ms. Booher had continuously received positive performance reviews that did not identify any areas of needed improvement. She had also received praise for the development of a wellness curriculum she taught at the school.

32. After Ms. Booher was moved to the Middle School her office was located near the gymnasium and the choir room. This location was unusually noisy and aggravated Ms. Booher's symptoms.

33. Ms. Booher taught her wellness course in classroom 210. This classroom was used for a twenty-minute advisory meeting in the morning before Ms. Booher arrived at work. Ms. Booher and her co-teacher were the only teachers with classes assigned to room 210.

34. Throughout 2018 and 2019, Ms. Booher verbally requested to work in classroom 210 because it had minimal exposure to noise. Ms. Booher made these requests to Ms. Gustavson, Mr. Fonarow, Middle School Principal Pamela Smith ("Ms. Smith"), Middle School Assistant Principal Charlotte Larson ("Ms. Larson") but these requests were denied.

35. On or about April of 2018, Ms. Booher met with her medical provider, Dr. Karri A. Buresh who prepared an eye care report. The report recommended reasonable accommodation including maximizing natural lighting, visual breaks, and minimizing auditory stimulus.

36. Dr. Buresh's report was provided to Rowland Hall but Ms. Booher's request to work in room 210 continued to be denied.

37. On or about February 25, 2019, Ms. Booher signed an employment agreement with Rowland Hall for the term of August 1, 2019, until July 31, 2020. In the contract Ms. Booher's hours were reduced by Rowland Hall to .80 full-time while her previous contract was for .85 full-time.

38. On or about March 25, 2019, Ms. Booher met with her neuropsychologist Dr. Antonietta Russo ("Dr. Russo") for a neuropsychiatric examination. Rowland Hall specifically requested

Ms. Booher to get a new neuropsychiatric examination before it would consider any of her accommodation requests.

39. Neuropsychiatric evaluations are extensive and can require several days to complete.

40. Dr. Russo recommended that any testing be delayed until after school was out for the summer because it would be too stressful for Ms. Booher to complete the testing while she was working unaccommodated in a noisy and distracting environment.

41. On or about April 19, 2019, Ms. Smith and Ms. Booher met and discussed Ms. Booher's need for reasonable accommodations. Two days later on April 21st, Ms. Smith provided Ms. Booher a reasonable accommodation form and told Ms. Booher that it "may help."

42. On or about May 16, 2019, Ms. Booher and Ms. Uhle met to speak about Ms. Booher's reasonable accommodations. Ms. Uhle told Ms. Booher that Rowland Hall was only supporting her until she was back to "full steam" and that Rowland Hall could change the requirements of Ms. Booher's position as they chose without regard to Ms. Booher's disability.

43. On or about May 17, 2019, Ms. Booher told Ms. Smith that she was having trouble receiving reasonable accommodations. Ms. Booher again requested to use a quiet area like classroom 210. Ms. Smith said that it was impossible to do anything until they received a new neuropsychiatric evaluation from her doctor. Ms. Booher asked what type of support she could expect from Rowland Hall after providing medical documentation and Ms. Smith replied that she could not commit to anything.

44. The noise and distraction from Ms. Booher's office was damaging to her medical condition and prevented her from working more hours on campus. Ms. Booher requested to work in a quiet

area to spend more time on campus, and with a quiet office she would have been able to work full-time.

45. After Ms. Booher completed her neuropsychiatric testing, she set up a meeting on or about August 9, 2019, for Ms. Booher and Ms. Smith to meet with Dr. Russo. Dr. Russo requested to speak with the school because she was concerned the school did not understand the importance of a quiet workspace. By reducing Ms. Booher's on campus exposure to stimulus this would have improved her health and negated much of the need for additional reasonable accommodations.

46. Dr. Russo told Ms. Smith about Ms. Booher's diagnosis and the reasons that Ms. Booher needed reasonable accommodation. Dr. Russo recommended Ms. Booher be reassigned from her office to a quieter space, take breaks in between meetings, and not attend back-to-back activities. Dr. Russo told Ms. Smith that it was a top priority for Ms. Booher's health and Ms. Smith verbally acknowledged these recommendations.

47. On or about August 14, 2019, at a training day for the new school year, Ms. Smith found Ms. Booher and informed her that taking breaks and not attending all the training sessions was not acceptable.

48. On or about August 23, 2019, Ms. Booher met with Ms. Smith to review the suggestions from Dr. Russo. Ms. Smith said that Ms. Booher wanted special treatment and everyone would like to be allowed to be excused from things such as back-to-back meetings. Ms. Smith reiterated that nothing could be done without a new written note from Dr. Russo.

49. On or about September 11, 2019, Ms. Booher met with Ms. Smith. They discussed what hours Ms. Booher would work from home. Ms. Booher explained that she was available online

and via phone at home each morning. Ms. Booher again asked what support she could expect from Rowland Hall after Dr. Russo wrote a note. Ms. Smith replied that she would not know until she saw the note.

50. On or about October 7, 2019, Ms. Smith informed Ms. Booher that she would schedule a regularly occurring twenty-minute meeting for the two of them to talk as a team about the Academic Support Counseling program. These meetings never occurred.

51. During approximately the last week of October of 2019, Dr. Russo and Ms. Booher's speech language pathologist, Ally Cayias (Ms. Cayias"), provided written documentation requesting the following reasonable accommodations: an office located in a quiet space, noise cancelling headphones, one day of work from home per week, no back-to-back meetings or classes, virtual attendance at meetings or additional time post-meeting to review meeting materials, regular rest breaks, meeting coordination and scheduling duties to be reassigned to a different employee, and to receive a secure reader application which would allow Ms. Booher to avoid prolonged reading. Ms. Booher's medical providers also requested no lunch supervision duty, work from home until 10:10am and between 2:20-3:20 each day, except for 'E' schedule days and when doing so would conflict with a class Ms. Booher was scheduled to teach.

52. A majority of the recommended reasonable accommodations requested by Ms. Booher's medical providers would not have been necessary had Rowland Hall provided Ms. Booher with a quieter office.

53. On or about November 21, 2019, Ms. Booher met with Ms. Smith to ask about the status of the reasonable accommodations recommended by Dr. Russo and Ms. Cayias. Ms. Smith stated that she would speak with Ms. Uhle about the matter.

54. Ms. Booher was granted noise cancelling headphones but these were never provided.

55. On or about December 13, 2019, Ms. Booher met with Ms. Uhle and Ms. Smith. Ms. Booher thought they were meeting to discuss her accommodation requests and had prepared for Ms. Caiyas to attend the meeting via telephone. Ms. Uhle and Ms. Smith refused to allow Ms. Caiyas to participate in the meeting.

56. Ms. Uhle and Ms. Smith explained Rowland Hall would no longer accommodate Ms. Booher. They did not discuss how Ms. Booher's accommodation requests could be implemented or discuss alternatives. Ms. Uhle and Ms. Smith told Ms. Booher that Rowland Hall has been asking "when will you get better?" and Ms. Booher cannot answer that.

57. Ms. Uhle also told Ms. Booher she could stay in the Rowland Hall community as a tutor working with students and families.

58. On December 17, 2019, Ms. Booher again met with Ms. Uhle and Ms. Smith. Ms. Uhle and Ms. Smith confirmed that because Rowland Hall would no longer provide Ms. Booher with accommodations, they were terminating her employment. Ms. Uhle and Ms. Smith also denied Ms. Booher's request to consider her accommodation requests one by one. Ms. Booher was told that if she needed all the accommodations for her health, they would not negotiate on the requests individually.

59. Ms. Booher was not provided with a written 30-day notice of her termination as stated in her contract.

60. On or about December 17, 2019, Ms. Booher emailed Ms. Uhle and Ms. Smith to confirm that reasonable accommodations had been provided to that point based on Rowland Hall's expectation that Ms. Booher would eventually no longer require any reasonable accommodation

and Rowland Hall's "future vision" for the position would not be available to Ms. Booher because she needed ongoing reasonable accommodations.

61. On or about December 19, 2019, Ms. Smith sent Ms. Booher an email stating that Ms. Booher would be terminated from Rowland Hall "at some point in January." Ultimately, Rowland Hall determined that Ms. Booher's last day would be January 17, 2020, and she continued to work the remainder of her time largely unaccommodated.

62. Over the course of the December meetings between Rowland Hall and Ms. Booher, Ms. Smith assured Ms. Booher that her performance was not a factor in Rowland Hall's decision to end her employment.

63. Up until 2019, Ms. Booher had received only positive feedback on her performance, her ability to work with students, and her contributions in the development of a wellness curriculum. Prior to the start of the 2019-2020 school year, the only feedback provided to Ms. Booher was the need to be more proactive.

64. Ms. Smith also met with Ms. Booher to discuss a communication strategy regarding Ms. Booher's termination. Ms. Smith expressed concern to Ms. Booher about the language used to announce her departure to faculty, students, and families and did not want these groups to be told that Ms. Booher had been fired. Ms. Smith informed Ms. Booher that Rowland Hall would like to announce Ms. Booher's departure as a mutual decision.

65. Throughout the remainder of her employment, Ms. Smith asked Ms. Booher on several occasions if she needed anything. Ms. Booher responded to these inquiries by renewing her requests for accommodation but Rowland Hall did not respond to these requests.

66. Ms. Smith and Ms. Uhle also insisted during this time that Ms. Booher turn over all her wellness curriculum to the school, something that had not been required of other teachers who resigned from the school.

67. On January 17, 2020, Ms. Booher's last day of employment, Ms. Booher met with Ms. Smith and Ms. Uhle. Because Rowland Hall had been so effusive in its praise of the value Ms. Booher brought to the school, and the assurances she would continue to be part of the Rowland Hall community, Ms. Booher believed there was an opportunity to remain employed.

68. During this meeting, Ms. Booher requested the reasonable accommodation of job restructuring. Specifically, Ms. Booher asked if she could continue teaching her wellness class and substituting as needed.

69. Ms. Smith and Ms. Uhle denied this request and did not discuss alternative accommodations such as reassignment to another position.

70. Ms. Booher was presented with a separation agreement asking for a release of claims and the destruction of recordings Ms. Booher had taken when meeting with Ms. Uhle and Ms. Smith only after getting their permission to record the meetings.

71. Ms. Booher requested additional time to review the agreement and expressed concerns about releasing possible claims because of the circumstances of her termination.

72. The school's Chief Financial Officer, Gwen Fonarow ("Ms. Fonarow"), told Ms. Booher she expected Ms. Booher's cooperation with the separation agreement.

73. Ms. Smith told Ms. Booher that a letter of recommendation was contingent on signing the agreement.

74. Over the course of the multiple meetings held on January 17, 2020, Ms. Booher discussed her desires to remain part of the Rowland Hall community by tutoring students. Ms. Uhle and Ms. Smith were supportive of Ms. Booher's plans to transition to tutoring.

75. Ms. Booher was terminated from her employment on or about January 17, 2020.

76. Rowland Hall did not replace Ms. Booher's position with a new full-time staff member. Her academic support duties were reassigned to the Assistant Principal, Ms. Larson, and Ms. Smith. Other faculty members taught the wellness class for the remainder of the school year.

77. Ms. Booher's Academic Support Counselor position was not filled until approximately late May of 2020. Ryan Hoglund ("Mr. Hoglund"), who was also the Director of Ethical Education, assumed Ms. Booher's academic support duties while remaining in his position as the Director of Ethical Education and splitting his time between these duties.

78. Mr. Hoglund was also assigned to use room 210 as an office. The advisory meetings that occurred in room 210 had been shifted to other spaces in the school.

79. After consulting with an attorney, Ms. Booher requested more time to review Rowland Hall's proposed separation agreement to consider her possible legal claims. Rowland Hall granted the request for additional time, but informed Ms. Booher's counsel that she was no longer welcome on campus.

80. Rowland Hall typically allowed tutors on campus to meet with students to better address challenges they faced with the curriculum. Rowland Hall also provided a list of tutors to families and helped them to identify a good fit.

81. Tutors who work on campus have experienced a lucrative self-employment position and some have opened offices near the school to effectively serve students and market their services to families.

82. Ms. Booher has tutored Rowland Hall students since her termination. Because Rowland Hall banned Ms. Booher from coming to campus, she is not able to provide this same level of service to students and suffered economic loss.

83. After declining to accept Rowland Hall's separation agreement, the school would not provide Ms. Booher a letter of recommendation. This has made it difficult for Ms. Booher to secure another position with an educational institution and caused economic harm.

## FIRST CLAIM FOR RELIEF

**Disability Discrimination (Failure to Provide Reasonable Accommodations) in Violation of the ADA**

Ms. Booher incorporates herein by reference all allegations made in previous paragraphs, and further alleges as follows:

84. Ms. Booher is an individual with disabilities as defined by the ADA. Her traumatic brain injury is a physical and mental impairment which substantially limits major life activities such as thinking, normal brain function, concentration, and energy.

85. Ms. Booher could perform the essential functions of her position with or without reasonable accommodations. Ms. Booher's medical providers affirmed Ms. Booher's ability to perform the essential functions of her position throughout her employment. Ms. Booher and her medical providers provided many plausible accommodations to Rowland Hall.

86. Ms. Booher requested reasonable accommodation starting in 2014 and she was granted reasonable accommodation only on an ad hoc basis. Ms. Booher was instructed that any reasonable accommodation provided could not be provided on a permanent basis. Ms. Booher was instructed that all reasonable accommodation was meant to assist her until she was completely healed and the position required her to be completely healed.

87. Ms. Booher was not provided noise cancelling headphones due to Rowland Hall's instructions regarding expense reimbursement. Ms. Booher was not allowed to switch her office location to a quieter location, including to room 210. Ms. Booher was criticized for working from home and was told that she was needed at all times on campus. Rowland Hall did not offer any other reasonable accommodation suggestions to minimize noise.

88. Ms. Booher repeatedly brought up reasonable accommodation to her managers and administration and attempted to make the reasonable accommodation interactive process as functional as possible by setting up meetings between Rowland Hall administration and her medical providers. Rowland Hall refused to meet with Ms. Cayias and told Ms. Booher that they would not consider recommendations made in their meeting with Dr. Russo.

89. Ms. Booher was told that her need for reasonable accommodation of her disability was asking for special treatment and unfair.

90. Ms. Booher explicitly asked for use of Room 210 instead of her office, and this accommodation was never granted. It was possible for Ms. Booher to use Room 210, which was subsequently assigned to a different teacher.

91. Some of Ms. Booher's reasonable accommodations were not granted. Other reasonable accommodations were granted but never implemented. Some of Ms. Booher's reasonable

accommodations were granted and implemented, but Ms. Booher was penalized for their implementation and faced criticism from Rowland Hall administration for using the reasonable accommodations.

92. Defendant also refused to engage in the interactive process with Ms. Booher when she made repeated requests for reasonable accommodation during the last several weeks of her employment. This included refusing to discuss Ms. Booher's reasonable accommodation request for job restructuring that would have allowed her to continue in her employment.

## SECOND CLAIM FOR RELIEF

**Disability Discrimination (Wrongful Termination) in Violation of the ADA**

Ms. Booher re-alleges and incorporates by reference the allegations set forth in the paragraphs above and further alleges as follows:

93. Ms. Booher is an individual with disabilities as defined by the ADA.

94. Ms. Booher was qualified to perform the essential functions of her job.

95. Rowland Hall was aware of Ms. Booher's disabilities. Ms. Booher repeatedly disclosed her diagnosis, symptoms, and treatment as part of her requests for reasonable accommodation. Ms. Booher provided medical documentation starting in 2014 and continued to provide medical documentation through the end of her employment.

96. Ms. Booher was terminated from her employment because of her disabilities. Ms. Booher was explicitly told that the future vision for the position required someone who did not need any reasonable accommodation.

97. Rowland Hall's unlawful acts were done with malice or reckless indifference to Ms. Booher's rights. Ms. Booher was penalized for using reasonable accommodation and was told that her need for accommodation was the basis for her termination.

## THIRD CLAIM FOR RELIEF

### Disability Discrimination (Retaliation) in Violation of the ADA

Ms. Booher re-alleges and incorporates by reference the allegations set forth in the paragraphs above and further alleges as follows:

98. Ms. Booher engaged in protected activities when she requested reasonable accommodation, including verbal requests, requests from her medical providers, and written requests. Ms. Booher engaged in protected activities when she informed Defendant she was pursing a possible legal claim to enforce her rights.

99. Ms. Booher was subject to an adverse employment action when she was terminated from her job on or about January 17, 2020. Ms. Booher was also subject to the adverse action of being banned from Defendant's place of employment.

100. A causal nexus exists between Ms. Booher's protected activities and the adverse employment action. Defendant's refusal to grant Ms. Booher her requested accommodations made it impossible for Ms. Booher to perform the essential functions of her position without serious impact on her health. Ms. Booher was explicitly terminated due to her continued requests and the need for reasonable accommodation. A casual nexus exists between Ms. Booher's efforts to pursue her legal claims and being banned from Defendant's placement of employment.

**PRAYER FOR RELIEF**

WHEREFORE, these premises considered, Plaintiff DONNA BOOHER respectfully requests that this Honorable Court:

1. Enter a permanent injunction enjoining Defendant from engaging in practices that discriminate based on disability;

2. Enter an order requiring Defendant to make Ms. Booher whole by placing her in the position she would have occupied in the absence of discrimination and retaliation, including back pay, front pay, interest, and other benefits that would have accrued.

3. Enter an order requiring Defendant to pay compensatory and punitive damages as a jury may assess;

4. Award Ms. Booher her reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §12205; and

5. Award such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby requests a jury trial.

RESPECTFULLY SUBMITTED this the 4th day of October, 2023.

        DISABILITY LAW CENTER

        */s/ Mary Anne Davies*
        MARY ANNE DAVIES
        LAURA HENRIE
        LAKSHMI VANDERWERF
        Disability Law Center
        960 South Main Street
        Salt Lake City, Utah 84101
        Phone: (801) 363-1347
        *Attorneys for Plaintiff*