---

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

---

| | |
|---|---|
| DONNA BOOHER,<br><br>          Plaintiff,<br><br>v.<br><br>ROWLAND HALL-ST. MARK'S SCHOOL,<br><br>          Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS<br>(DOC. NO. 20)**<br><br>Case No. 2:23-cv-00703<br><br>Magistrate Judge Daphne A. Oberg |

---

Plaintiff Donna Booher filed this case against her former employer, Rowland Hall-St. Mark's School, asserting Rowland Hall violated the Americans with Disabilities Act[1] ("ADA") by failing to provide Ms. Booher with reasonable accommodations, wrongfully terminating her, and unlawfully retaliating against her.[2]  Rowland Hall filed a partial motion to dismiss for failure to state a claim, arguing most of Ms. Booher's claims are time-barred because Ms. Booher failed to file an Equal Employment Opportunity Commission charge within 300 days of most of the alleged discriminatory acts.[3]  After

---

[1] 42 U.S.C. §§ 12101 *et seq.*

[2] (*See* Compl. ¶¶ 84–100, Doc. No. 2; Am. Compl. ¶¶ 92–111, Doc. No. 16.)

[3] (*See* Partial Mot. to Dismiss, Doc. No. 9.)

Ms. Booher filed an amended complaint,[4] Rowland Hall withdrew its motion to dismiss.[5] Rowland Hall has now filed a renewed partial motion to dismiss, arguing Ms. Booher's amended complaint does not resolve the timeliness issues Rowland Hall raised in its initial motion.[6]  As explained below, because most of Ms. Booher's claims are untimely, Rowland Hall's partial motion to dismiss is granted.[7]

<u>MOTION TO DISMISS STANDARD</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted."[8]  To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[9]  The court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.[10]  But failure to satisfy a

---

[4] (*See* Am. Compl., Doc. No. 16.)

[5] (Stipulated Mot. to Withdraw the Partial Mot. to Dismiss, Doc. No. 17; *see also* Docket Text Order, Doc. No. 19 ("Defendant's partial motion to dismiss is moot based on the filing of the Amended Complaint.").)

[6] (Renewed Partial Mot. to Dismiss ("Mot."), Doc. No. 20.)

[7] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and Rule 72-4(a) of the Local Rules of Civil Practice.  (*See* Doc. No. 15.)

[8] Fed. R. Civ. P. 12(b)(6).

[9] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[10] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

statute of limitations can render a claim implausible under Rule 12(b)(6) when the dates in the complaint make clear the claim is extinguished.[11]

## BACKGROUND

Ms. Booher's allegations are as follows.[12]  While working at Rowland Hall as an Academic Support Counselor in June 2014, Ms. Booher sustained a traumatic brain injury after being knocked into a wall by a running student.[13]  In September 2014, Ms. Booher began a period of short-term disability leave to recover from her injury.[14]  During this leave, one of her medical providers wrote to Rowland Hall recommending Ms. Booher return to work with some accommodations, including a reduction of hours and the ability to work from home.[15]  The provider also "stated that ultimately Ms. Booher would likely be able to return to full-time work with minimal reasonable

---

[11] *See Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) ("[A] statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." (citation and internal quotation marks omitted)); *see also, e.g.*, *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1228–29 (D. Utah 2017) (granting the defendant's Rule 12(b)(6) motion because the plaintiff's complaint was filed outside the statute of limitations period).

[12] Although Rowland Hall disputes many of Ms. Booher's factual allegations, (*see* Mot. 4 n.13, Doc. No. 20), at the motion to dismiss stage, the court treats Ms. Booher's allegations as true and draws all reasonable inferences in her favor.  *See Wilson*, 715 F.3d at 852.

[13] (Am. Compl. ¶ 16, Doc. No. 16.)

[14] (*Id.* ¶ 17.)

[15] (*Id.* ¶¶ 18–19.)

accommodations."[16]  When Ms. Booher returned to work, "a majority" of her accommodation requests were granted, but some were denied, such as her request to work from home.[17]

Over the next five years, Ms. Booher requested additional accommodations, including the ability to work from home,[18] reassignment to another position or classroom,[19] assignment of some of Ms. Booher's administrative duties to other staff members,[20] and technological aids.[21]  Rowland Hall denied most of these requests.[22] At a meeting, Rowland Hall officials informed Ms. Booher the school was "only supporting her until she was back to 'full steam.'"[23]  Ms. Booher claims this statement reflected Rowland Hall's policy that it would only accommodate her if she would eventually be "one hundred percent healed."[24]

On December 13, 2019, Ms. Booher met with Rowland Hall's human resources manager and its middle school principal, who explained Rowland Hall "would no longer

---

[16] (*Id.* ¶ 19.)

[17] (*Id.* ¶ 20.)

[18] (*Id.* ¶ 53.)

[19] (*Id.* ¶¶ 32–34, 45, 48, 53.)

[20] (*Id.* ¶ 53.)

[21] (*Id.* ¶¶ 28, 53.)

[22] (*See id.* ¶¶ 28, 34–38, 45, 49–50.)

[23] (*Id.* ¶ 42.)

[24] (*Id.* ¶ 43.)

accommodate Ms. Booher."[25]  The principal also "articulated the school's expectation . . . that Ms. Booher would need to be fully healed without the need for reasonable accommodation to continue in her position."[26]  A few days later, on December 17, 2019, the same human resources manager and principal told Ms. Booher Rowland Hall was "terminating her employment because she would never be fully healed."[27]  On December 19, 2019, the human resources manager emailed Ms. Booher, advising her she "would be terminated from Rowland Hall 'at some point in January.'"[28] Ms. Booher states she "understood from these conversations that she was being terminated from her position because she required ongoing accommodations."[29]

At a "later" unspecified time, Rowland Hall determined Ms. Booher's last day would be January 17, 2020, and Ms. Booher worked "largely unaccommodated" until then.[30]  Throughout the remainder of her time at Rowland Hall, Ms. Booher renewed her accommodation requests several times, but Rowland Hall denied them "and maintained its one hundred percent healed policy."[31]

---

[25] (*Id.* ¶ 58.)

[26] (*Id.* ¶ 60.)

[27] (*Id.* ¶ 62.)

[28] (*Id.* ¶ 67.)

[29] (*Id.* ¶ 70.)

[30] (*Id.* ¶ 67.)

[31] (*Id.* ¶ 73.)

Sometime between the December 17, 2019 meeting and Ms. Booher's last day of work, she met with Rowland Hall's human resources manager "to discuss a communication strategy regarding Ms. Booher's termination," because Rowland Hall preferred to announce her departure as a mutual decision rather than a firing.[32]  They also "discussed the possibility of Ms. Booher assuming a substitute teacher role," or "maintaining an informal relationship with Rowland Hall as a private tutor."[33]

On Ms. Booher's last day—January 17, 2020—she again met with Rowland Hall's human resources manager and middle school principal.[34]  During this meeting, Ms. Booher requested the accommodation of "job restructuring," which Rowland Hall denied.[35]  Ms. Booher states she "believed there was an opportunity to remain employed," and she "discussed her desires to remain part of the Rowland Hall community by tutoring students."[36]  At the meeting, Rowland Hall presented Ms. Booher with a separation agreement.[37]  Because Ms. Booher later declined to sign the agreement, Rowland Hall banned her from entering the school campus.[38]

---

[32] (*Id.* ¶ 71.)

[33] (*Id.* ¶ 72.)

[34] (*Id.* ¶ 75.)

[35] (*Id.* ¶¶ 76–77.)

[36] (*Id.* ¶¶ 75, 82.)

[37] (*Id.* ¶ 78.)

[38] (*Id.* ¶¶ 87, 90–91.)

On November 12, 2020, exactly 300 days after her final day of work, Ms. Booher brought a discrimination charge against Rowland Hall with the EEOC.[39]  Ms. Booher now brings three claims for relief under the ADA.  First, she claims Rowland Hall wrongfully denied her accommodation requests.[40]  Second, Ms. Booher claims Rowland Hall relied on its "one hundred percent healed policy" to wrongfully terminate her because of her disability.[41]  Third, Ms. Booher claims Rowland Hall retaliated against her by terminating her and banning her from campus—based on her protected activities of making accommodation requests and informing Rowland Hall she may file a claim.[42]

ANALYSIS

Rowland Hall seeks to dismiss two sets of Ms. Booher's claims, each on timeliness grounds.  First, Rowland Hall argues Ms. Booher's failure-to-accommodate claim should be limited to the denial of Ms. Booher's request for job restructuring on January 17, 2020, because the remainder of the accommodation denials occurred more than 300 days before Ms. Booher brought her EEOC charge.[43]  Second, Rowland Hall

---

[39] (*See* Ex. A to Mot., Charge of Discrimination, Doc. No. 20-1.)  Neither party disputes the date Ms. Booher filed her EEOC charge, and it is appropriate for the court to take judicial notice of the date.  *See, e.g.*, *Watkins v. Genesh, Inc.*, No. 22-2273, 2024 U.S. Dist. LEXIS 23188, at *3 n.3 (D. Kan. Feb. 9, 2024) (unpublished) (noting a court may take judicial notice of undisputed EEOC charges where they are central to and referenced in the plaintiff's complaint, and "[f]urther, the Court may take judicial notice of the EEOC documents because they are administrative documents").

[40] (Am. Compl. ¶¶ 92–102, Doc. No. 16.)

[41] (*Id.* ¶¶ 103–08.)

[42] (*Id.* ¶¶ 109–11.)

[43] (Mot. 12–17, Doc. No. 20.)

contends the claims relating to Ms. Booher's termination are untimely, because Ms. Booher failed to bring an EEOC charge within 300 days of the notice of her termination.[44]  As explained below, because both sets of claims are untimely, Rowland Hall's partial motion to dismiss is granted.

### I.    Ms. Booher's failure-to-accommodate claim is untimely, except as to her January 2020 accommodation request.

Rowland Hall argues Ms. Booher's failure-to-accommodate claim must be limited to the denial of her job restructuring request on January 17, 2020, because Ms. Booher did not file timely EEOC charges challenging Rowland Hall's denials of her previous accommodation requests.[45]  Noting Ms. Booher filed her EEOC charge on November 12, 2020, Rowland Hall contends Ms. Booher can only challenge actions occurring in the 300 days preceding that date.[46]  And aside from her request for job restructuring on January 17, 2020, all the challenged accommodation denials occurred more than 300 days before November 12, 2020.  Neither party disputes this.[47]  Accordingly, Rowland

---

[44] (*Id.* at 17–19.)

[45] (*Id.* at 12–13.)

[46] (*Id.*); *see also Matthews v. Kennecott Utah Copper Corp.*, 54 F. Supp. 2d 1067, 1073 (D. Utah 1999) (citing 42 U.S.C. § 2000e-5(e)(1)) (explaining that in states—like Utah—where a state agency has authority to investigate employment discrimination, "Title VII requires claimants to file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice").

[47] (*See generally* Am. Compl., Doc. No. 16; Mot. 2, Doc. No. 20.)

Hall contends Ms. Booher's failure-to-accommodate claim must be limited to the denial of her request for job structuring.[48]

In response, Ms. Booher asserts she can challenge denials occurring outside the 300-day charging period, because they were based on Rowland Hall's "one hundred percent healed" policy, whereby the school refused to employ her unless she would eventually be "fully healed."[49]  Ms. Booher contends this policy constitutes a "continuing violation," allowing her to challenge denials occurring outside the charging period.[50] She also argues Rowland Hall cannot raise a statute of limitations defense in a motion to dismiss.[51]

In reply, Rowland Hall contends the continuing violation theory is inapplicable, because each denial of an accommodation request constitutes a discrete act, and discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[52]  Thus, according to Rowland Hall, Ms. Booher cannot challenge accommodation denials occurring outside the charging period, even if the "one hundred percent healed policy" connects them to a timely challenged act.[53]

---

[48] (Mot. 17, Doc. No. 20.)

[49] (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n") 4–11, Doc. No. 25.)

[50] (*Id.*)

[51] (*Id.* at 2–3, 11–15.)

[52] (Mot. 12–17, Doc. No. 20 (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 114–15 (2002)); *see also* Reply in Supp. of Partial Mot. to Dismiss ("Reply") 3–7, Doc. No. 29.)

[53] (Reply 3–7, Doc. No. 29.)

Rowland Hall also contends it is appropriate to raise the statute of limitations at the motion-to-dismiss stage, where it is clear from the complaint Ms. Booher's claims are time-barred.[54]

As an initial matter, Ms. Booher's argument that Rowland Hall cannot raise the statute of limitations in a motion to dismiss fails. "A statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished."[55] As explained below, even accepting the dates Ms. Booher provides for Rowland Hall's denials of her accommodation requests, Ms. Booher's claims are untimely as a matter of law. Accordingly, dismissal based on the statute of limitations is proper.[56]

Ms. Booher's next argument—that Rowland Hall's denials of her accommodation requests constituted a continuing violation—also fails. Even assuming Rowland Hall had a "one hundred percent healed" policy, Ms. Booher cannot challenge denials occurring outside the charging period. Under the continuing violation theory, "a plaintiff may recover for discriminatory acts that occurred prior to the statutory limitations period if they are part of a continuing policy or practice that includes the act or acts within the

---

[54] (*Id.* at 9.)

[55] *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation marks omitted).

[56] *See id.*

statutory period."[57]  But "a continuing violation theory of discrimination is not permitted for claims against discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire"[58]—even if "related to acts alleged in timely filed charges."[59]  Where discrete acts are at issue, "the limitations period will begin to run for each individual act from the date on which the underlying act occurs" because "[e]ach discrete [act] is a separate actionable unlawful employment practice."[60]  Importantly, the denial of an accommodation request is also a discrete act.[61]

Where the "denial of [a] request for an accommodation constitutes a discrete act of alleged discrimination,"[62] Rowland Hall's denials of Ms. Booher's accommodation requests cannot support a continuing violation theory as a matter of law.[63]  This is true

---

[57] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003) (internal quotation marks omitted) (quoting *Mascheroni v. Bd. of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1561 (10th Cir. 1994)).

[58] *Id.* at 1184 (citing *Morgan*, 536 U.S. at 114).

[59] *Id.* (quoting *Morgan*, 536 U.S. at 113).

[60] *Id.* at 1185.

[61] *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1210 (10th Cir. 2007) (citing *Morgan*, 536 U.S. at 113) (holding the "denial of [a] request for an accommodation constitutes a discrete act of alleged discrimination," and is therefore "not actionable unless [the plaintiff] files suit based on this act"); *see also, e.g., Celani v. IHC Health Servs., Inc.*, No. 4:22-cv-00066, 2023 U.S. Dist. LEXIS 177424, at *8 (D. Utah Oct. 2, 2023) (unpublished) (quoting *Proctor* and *Davidson* in holding "[t]he denial of a 'request for an accommodation constitutes a discrete act of alleged discrimination,'" and thus "is not actionable if time-barred, 'even when [the discrete act is] related to acts alleged in timely filed charges'").

[62] *Proctor*, 502 F.3d at 1210.

[63] *See Davidson*, 337 F.3d at 1184–85 (citing *Morgan*, 536 U.S. at 114).

"even if the discrete act was part of a company-wide or systemic policy."[64]  Because the continuing violation theory does not apply to discrete acts of discrimination, such as Ms. Booher's failure-to-accommodate challenges, even if Rowland Hall acted pursuant to a "one hundred percent healed" policy, most of Ms. Booher's challenges are time-barred. Ms. Booher's failure-to-accommodate claim is limited to acts occurring within the charging period.

Ms. Booher attempts to support her "continuing violation" argument with two cases.  But neither applies.  First, Ms. Booher relies on *Croy v. Cobe Laboratories, Inc.*,[65] a case in which the Tenth Circuit permitted a plaintiff to challenge her employer's continuous failure to promote her.[66]  The plaintiff claimed her employer placed a "glass ceiling" on the advancement of female employees at the company.[67]  The Tenth Circuit held the glass ceiling claim fell under a continuing violation theory because the plaintiff alleged "a *continuous* failure to promote her, which did not involve discrete acts that could or should have triggered any obligation of [the plaintiff] to complain to the EEOC."[68]  But Ms. Booher's claim does not rely on a continuous failure to act in the absence of discrete, triggering acts.[69]  Rather, her claim relies on discrete denials of

---

[64] *Id.* at 1186–87.

[65] 345 F.3d 1199 (10th Cir. 2003).

[66] *Id.* at 1202–03.

[67] *Id.* at 1203.

[68] *Id.* (emphasis in original) (internal quotation marks omitted).

[69] *See id.*

specific requests for accommodation, each of which Ms. Booher could (or should) have brought to the EEOC.[70]  Where Ms. Booher challenges discrete, actionable events as opposed to a continuous failure to act, *Croy* is unhelpful.

Next, Ms. Booher relies on *Stowers v. WinCo Foods LLC*.[71]  In *Stowers*, the District of California permitted a plaintiff to amend her complaint to add a continuing violation claim based on an employer policy.[72]  Like Ms. Booher, the plaintiff sought to challenge her employer's denial of a request for accommodation, which occurred outside the limitations period.[73]  Specifically, the *Stowers* plaintiff sought to raise a continuing violation claim by connecting the denial to other, timely challenged conduct and arguing the employer acted pursuant to a one-hundred-percent-healed policy.[74]  Permitting the plaintiff to add the claim, the court found it could not conclude the "Plaintiff would be unable to prove a [disability discrimination] claim under a continuing violation theory."[75]

---

[70] (*See, e.g.*, Am. Compl. ¶ 20 (alleging Rowland Hall denied her request for the accommodation of working from home), ¶ 28 (alleging Rowland Hall denied her request for the accommodation of reassignment to a new position), ¶ 34 (alleging Rowland Hall denied her request to move to a different classroom), Doc. No. 16.)

[71] No. 13-cv-02631, 2014 U.S. Dist. LEXIS 54351 (N.D. Cal. Apr. 17, 2014) (unpublished).

[72] *Id.* at *13.

[73] *Id.* at *6–7.

[74] *Id.* at *7.

[75] *Id.* at *8.

But the Tenth Circuit has rejected the "continuing violation" standard the *Stowers* court relied on.  Under the *Stowers* approach, to establish a continuing violation, "a plaintiff must show that the employer's unlawful actions are (1) sufficiently similar in kind; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence."[76]  Before *AMTRAK v. Morgan*,[77] courts in the Tenth Circuit used essentially the same three-factor inquiry, assessing "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence."[78]  But in *Davidson*, the Tenth Circuit concluded the Supreme Court invalidated that test in *Morgan*:  "*Morgan* implicitly overturns prior Tenth Circuit law in that plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations period."[79] *Stowers* is inapplicable where the court applied a test the Tenth Circuit has rejected. Under Tenth Circuit precedent, plaintiffs cannot challenge discrete acts (including

---

[76] *Id.* at *7 (citing *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823, 29 P.3d 175 (2001)).

[77] 536 U.S. 101 (2002).

[78] *See Davidson*, 337 F.3d at 1184 (quoting *Mascheroni*, 28 F.3d at 1561).

[79] *Id.* at 1185; *see also Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003) ("*Morgan* abrogates the continuing violation doctrine as previously applied . . . . [and o]ur decisions have unambiguously recognized *Morgan* as rejecting application of the 'continuing violation' theory.").

denials of accommodation requests) occurring outside the limitations period, under a continuing violation theory.[80]

Ms. Booher also contends *Davidson* does not stand "for the principle that discrete acts, even when connected by a discriminatory policy, remain discrete," because the discrimination in *Davidson* flowed from individualized determinations, not a policy.[81] She argues Rowland Hall's denials of her accommodation requests were dictated by its "one hundred percent healed" policy, meaning it made no individualized determinations, contrary to *Davidson*.[82] But Ms. Booher reads too much into *Davidson* and the cases it relied on. The *Davidson* plaintiff specifically alleged his employer acted "pursuant to [a] discriminatory [] policy," and the Tenth Circuit expressly rejected the plaintiff's attempt to link discrete acts by connecting them to the policy.[83] Just as the *Davidson* plaintiff's claim stemmed from individual acts resulting from implementation of

---

[80] *See Davidson*, 337 F.3d at 1184 ("[A] continuing violation theory of discrimination is not permitted for claims against discrete acts of discrimination . . . ."); *Proctor*, 502 F.3d at 1210 ("[The] denial of [a] request for an accommodation constitutes a discrete act of alleged discrimination . . . .").

[81] (Opp'n 10–11, Doc. No. 25.)

[82] (*See id.*)

[83] *See Davidson*, 337 F.3d at 1186 ("[The plaintiff's] assertion that these discrete acts flow from a company-wide or systemic discriminatory practice will not succeed in establishing [the employer's] liability for acts occurring outside the limitations period because the *Morgan* Court determined that each incident of discrimination constitutes a separate actionable unlawful employment practice."); *see also id.* at 1185–86 ("[The plaintiff] is limited to filing a claim for the refusals to hire that occurred within the appropriate time period. This remains true even if the discrete act was part of a company-wide or systemic policy." (internal citations and quotation marks omitted)).

a policy,[84] Ms. Booher's claims stem from denials of discrete accommodation requests resulting from implementation of a policy.  The inquiry hinges on whether the acts constituted separate, actionable practices—even if the practices were driven by policy.[85] The acts Ms. Booher challenges as "failures to accommodate" are distinct and individually actionable.  And under *Davidson*, challenges to discrete acts occurring outside the charging period are time-barred, even if they flowed from a discriminatory policy.

Relatedly, Ms. Booher argues "the Tenth Circuit has not conclusively made [] a finding" that "a failure to accommodate is a discrete act."[86]  But in *Proctor*, the Tenth Circuit explicitly noted the plaintiff's "denial of [a] request for an accommodation constitutes a discrete act of alleged discrimination," and is, therefore, "not actionable unless [the plaintiff] files suit based on this act."[87]  And other courts have followed suit.[88]

Finally, Ms. Booher contends that whether Rowland Hall had a "one hundred percent healed" policy is a question of fact, which cannot be decided at the motion to

---

[84] *Id.* at 1186.

[85] *See id.* at 1185–86.

[86] (Opp'n 10, Doc. No. 25.)

[87] *Proctor*, 502 F.3d at 1210.

[88] *See, e.g.*, *Celani*, 2023 U.S. Dist. LEXIS 177424, at *8–11 (quoting *Proctor* and *Davidson* in holding "[t]he denial of a 'request for an accommodation constitutes a discrete act of alleged discrimination,'" and thus "is not actionable if time-barred, 'even when [the discrete act is] related to acts alleged in timely filed charges'").

dismiss stage.[89]  But whether Rowland Hall had such a policy is immaterial at this point because, as explained above, Ms. Booher cannot challenge accommodation request denials occurring outside the charging period, regardless of whether the denials stemmed from a systemic policy.

In sum, challenges to denials of Ms. Booher's accommodation requests that occurred outside the charging period are time-barred, even if the denials were made pursuant to a "one hundred percent healed" policy.  Accordingly, Ms. Booher's failure-to-accommodate claim[90] is dismissed to the extent it challenges accommodation denials occurring outside the charging period.

## II.   Ms. Booher's termination claims are untimely.

The second set of claims Rowland Hall seeks to dismiss are Ms. Booher's disability discrimination and retaliation claims based on her termination.[91]  Rowland Hall argues any claims based on Ms. Booher's termination are time-barred, because Ms. Booher did not file her EEOC charge within the 300-day charging period for these claims.[92]  Rowland Hall contends the 300-day period began on December 17, 2019, when Rowland Hall first informed Ms. Booher she was being terminated.[93]  Ms. Booher,

---

[89] (Opp'n 3, Doc. No. 25.)

[90] (Am. Compl. ¶¶ 92–102, Doc. No. 16.)

[91] (Mot. 17–19, Doc. No. 20.)

[92] (*Id.*)  Rowland Hall does not seek dismissal of Ms. Booher's retaliation claim relating to the school's alleged banning of Ms. Booher from the school's campus.  (*See id.* at 1.)

[93] (*Id.* at 17–19.)

on the other hand, contends the 300-day period began on January 17, 2020, her last day of work.[94]  In Ms. Booher's view, up until her final day of employment, she "reasonably believed that her employment with Rowland Hall could continue in a different capacity."[95]  Ms. Booher asserts that after the December 17, 2019 meeting, she discussed with the middle school principal the possibility of becoming a substitute teacher at Rowland Hall.[96]  Ms. Booher also notes Rowland Hall failed to provide her with a formal thirty-day termination notice, as required by her contract.[97]  In other words, Ms. Booher argues she "was not informed that the totality of her employment with Rowland Hall would end until January 17th[,] 2020."[98]

A review of the applicable legal authority shows Rowland Hall is correct; the 300-day period began on December 17, 2019, when Rowland Hall first notified Ms. Booher she was being terminated.  Title VII requires a claimant to file a discrimination charge with the EEOC within 300 days of when the discrimination occurred.[99]  This period "begins on the date the employee is notified of an adverse employment decision, even if

---

[94] (Opp'n 11–12, Doc. No. 25.)

[95] (*Id.*)

[96] (*Id.* at 12 (citing Am. Compl. ¶¶ 72, 75, Doc. No. 16).)

[97] (*Id.* (citing Am. Compl. ¶ 64, Doc. No. 16).)  As explained below, where Rowland Hall unequivocally notified Ms. Booher that it was "terminating her employment," the school's alleged failure to provide her a "formal" notice is immaterial.

[98] (*Id.* at 11.)

[99] *See Matthews v. Kennecott Utah Copper Corp.*, 54 F. Supp. 2d 1067, 1073 (D. Utah 1999) (citing 42 U.S.C. § 2000e-5(e)(1)).

the employee is later terminated."[100]  In other words, the 300-day clock starts "when the disputed employment practice—the demotion, transfer, firing, refusal to hire, or the like—is first announced to the plaintiff."[101]  Where the disputed employment practice is Ms. Booher's termination, the 300-day period began the day Rowland Hall "first announced" the termination to Ms. Booher.

Even under Ms. Booher's characterization of the facts, that date is December 17, 2019.  Ms. Booher states Rowland Hall informed her on December 17, 2019 that "they were terminating her employment."[102]  Even more, Ms. Booher acknowledges she "understood from these conversations [in December 2019] that she was being terminated."[103]  Ms. Booher was thus "first notified" of her termination on December 17, 2019.  Although Ms. Booher claims she "reasonably believed that her employment with Rowland Hall could continue in a different capacity,"[104] she has not shown how that belief changes the calculus.  Ms. Booher formed this belief based on discussions with Rowland Hall after the school informed Ms. Booher of her termination from her position as an academic counselor.[105]  But Ms. Booher does not assert Rowland Hall ever

---

[100] *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 256–59 (1980)).

[101] *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011).

[102] (Am. Compl. ¶ 62, Doc. No. 16.)

[103] (*Id.* ¶ 70.)

[104] (Opp'n 12, Doc. No. 25.)

[105] (*See id.*)

retracted its decision to terminate her from that position.  And "the clock starts running

when the plaintiff *first knew or should have known* of [her] injury."[106]  Because "the

proper focus is on the time that the employee has notice of the *discriminatory* acts, not

the time at which the *consequences* of the act became most painful,"[107] Rowland Hall's

review of whether to offer Ms. Booher a different position after announcing her

termination does not toll the clock.[108]  And Ms. Booher makes no other argument that

the limitations period should be tolled.[109]  Accordingly, the clock started on December

17, 2019, when Rowland Hall first notified Ms. Booher it was "terminating her

employment."[110]

      Ms. Booher argues this case is analogous to *Proctor*,[111] a case in which the

Tenth Circuit found a plaintiff timely brought his EEOC charge.[112]  After the *Proctor*

---

[106] *Almond*, 665 F.3d at 1176 (emphasis added) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979); *Rotella v. Wood*, 528 U.S. 549, 555–56 (2000)).

[107] *Id.* at 1177 (emphasis in original) (internal quotation marks omitted) (quoting *Ricks*, 449 U.S. at 258).

[108] *See id.* at 1179 ("The limitations period still accrues with the employer's announcement and 'the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods . . . . [and neither does] [t]he existence of careful procedures to assure fairness.'" (alternations in original) (quoting *Ricks*, 449 U.S. at 261)).

[109] *See generally Brough v. O.C. Tanner Co.*, No. 2:16-cv-1134, 2017 U.S. Dist. LEXIS 116469, at *4–5 (D. Utah July 25, 2017) (unpublished) (discussing tolling by express agreement and equitable tolling).

[110] (Am. Compl. ¶ 62, Doc. No. 16.)

[111] 502 F.3d 1200.

[112] *Id.* at 1207.

plaintiff sustained a work-related injury, he underwent a medical examination where the doctor's recommendation was binding on the parties, pursuant to a union contract.[113] Although the doctor recommended the plaintiff not continue in his current position, the plaintiff pursued worker's compensation claims and asked to return to work.[114] He also requested an ADA accommodation, which the employer considered and denied.[115] In the meantime, the employer told the plaintiff to call the workforce manager if he had questions regarding his employment status.[116] Only after the worker's compensation claims were finally closed did the employer notify the plaintiff his employment would be terminated.[117] The employer characterized the termination as "a delayed, but inevitable consequence" of the evaluator's recommendation and the employer's denial of the accommodation requests.[118]

The plaintiff filed an EEOC discrimination charge challenging his termination within 300 days of receiving the termination letter—but more than 300 days after receiving the evaluator's recommendation and the employer's accommodation denial.[119]

---

[113] *Id.* at 1203–04.

[114] *Id.*

[115] *Id.* at 1204.

[116] *Id.*

[117] *Id.* at 1204–05.  According to the employer, "the termination letter resulted from [the employer's] policy and practice of terminating an employee who has not returned to work once the employee's workers' compensation claims are resolved."  *Id.* at 1205.

[118] *Id.* at 1206.

[119] *See id.* at 1205.

After the plaintiff filed suit, the employer moved to dismiss the claim, arguing he failed to bring his EEOC charge within the 300-day charging period.[120]  The employer claimed the plaintiff had notice of his termination when he received the evaluator's binding recommendation and the employer's accommodation denial.[121]  The Tenth Circuit found the plaintiff's EEOC charge timely, holding that even if the evaluator's recommendation and accommodation denial inevitably resulted in the plaintiff's termination, the employer failed to notify the plaintiff of this inevitability.[122]

Ms. Booher attempts to analogize her situation with *Proctor* by arguing Rowland Hall did not make clear she would have no ongoing relationship with the school until her last day of work in January 2020.[123]  She contends the December 2019 meeting only "made [her] aware that Rowland Hall would no longer accommodate her in her Academic Counselor position."[124]  But there is no question Rowland Hall informed Ms. Booher at the December 2019 meeting that "they were terminating her employment."[125]  Later discussions about requests for reassignment do not change, toll, or invalidate this notice date.  This differs from *Proctor*, where the employer did not notify the plaintiff he would be terminated up front.  The 300-day period began for Ms. Booher on December

---

[120] *Id.*

[121] *Id.* at 1206.

[122] *Id.* at 1207.

[123] (Opp'n 13, Doc. No. 25.)

[124] (*Id.*)

[125] (Am. Compl. ¶¶ 62, 70, Doc. No. 16.)

17, 2019—the date she was first advised of her termination—and it expired on October 12, 2020.[126]  Accordingly, Ms. Booher's EEOC charge, filed on November 12, 2020, is untimely to the extent it challenges her termination.

In a related vein, Ms. Booher claims the statute of limitations period is only triggered after a cause of action becomes "complete and present."[127]  Ms. Booher argues her termination-related claims only accrued on January 17, 2020, when she became aware Rowland Hall would not accommodate or reassign her, "and thus planned to completely sever her employment relationship."[128]  But a request for reassignment, made after receiving a notice of termination, does not change the starting point of the limitations period.  While a request for reassignment may qualify as an accommodation request (although some courts conclude accommodation requests must be made before the termination decision),[129] Ms. Booher has offered no legal

---

[126] *See Almond*, 665 F.3d at 1177.

[127] (Opp'n 13–15, Doc. No. 25.)

[128] (*Id.* at 14.)

[129] *See McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x 897, 899 (11th Cir. 2014) (unpublished) (finding the district court properly granted summary judgment to the defendant on a failure-to-accommodate claim where the plaintiff requested an accommodation after his supervisors had decided to fire him); *Posey v. Hyundai Motor Mfg. Ala.*, No. 2:15-cv-787, 2017 U.S. Dist. LEXIS 10375, at *17 (M.D. Ala. Jan. 24, 2017) (unpublished) ("[A] request to be re-employed after termination is not a request for reasonable accommodation."); *United States EEOC v. St. Joseph's Hosp., Inc.*, No. 8:13-cv-2723, 2015 U.S. Dist. LEXIS 19272, at *23 (M.D. Fla. Feb. 18, 2015) (finding a post-termination request to be reassigned unreasonable as a matter of law); *Brown v. Pension Bds.*, 488 F. Supp. 2d 395, 407 (S.D.N.Y. 2007) (finding a post-termination accommodation request ineffective); *cf. Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318

support for the idea that such requests delay the accrual of a termination claim.  As explained above, in the "employment discrimination context, . . . a claim accrues when the disputed employment practice—the demotion, transfer, firing, refusal to hire, or the like—is first announced to the plaintiff."[130]  Ms. Booher's termination claim accrued on December 17, 2019, when Rowland Hall first announced the decision to terminate her. Because Ms. Booher failed to file an EEOC charge within 300 days of that date, the discrimination and retaliation claims relating to her termination are dismissed.[131]

CONCLUSION

Because the claims Rowland Hall seeks to dismiss are untimely, Rowland Hall's partial motion to dismiss[132] is granted and the following claims are dismissed.

- Ms. Booher's failure-to-accommodate claim[133] is dismissed to the extent it challenges accommodation denials occurring outside the charging

---

(10th Cir. 2017) (finding that "a denied request for retroactive leniency cannot support an accommodation claim").

[130] *Almond*, 665 F.3d at 1177 (citing *Ricks*, 449 U.S. at 250).

[131] Specifically, the following claims related to Ms. Booher's termination are dismissed: all of Ms. Booher's second cause of action for wrongful termination, (*see* Am. Compl. ¶¶ 103–108, Doc. No. 16), and all of Ms. Booher's third cause of action for unlawful retaliation *except* as this claim relates to Rowland Hall banning Ms. Booher from campus, (*see id.* ¶¶ 109–11.)

[132] (Mot., Doc. No. 20.)

[133] (Am. Compl. ¶¶ 92–102, Doc. No. 16.)

period.[134]

- Ms. Booher's wrongful termination claim[135] is dismissed.

- Ms. Booher's unlawful retaliation claim is dismissed to the extent it
  challenges Ms. Booher's termination.[136]

DATED this 24th day of September, 2024.

BY THE COURT:


_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[134] As explained above, Ms. Booher's failure-to-accommodate claim survives only to the extent it challenges Rowland Hall's denial of her January 17, 2020 request for the accommodation of job restructuring.

[135] (*Id.* ¶¶ 103–08.)

[136] (*Id.* ¶¶ 109–11.)  Because Rowland Hall does not seek dismissal of Ms. Booher's retaliation claim relating to the school banning Ms. Booher from coming to campus, this portion of her retaliation claim is not dismissed.